Next case is Mark Twardzik against HP Inc and NVIDIA Corporation. Mr. Hughes whenever you're ready. Good morning your honors. May it please the court. Spencer Hughes on behalf of appellate Mark Twardzik and I'd like to reserve three minutes for rebuttal. Granted. HP and NVIDIA misrepresented and omitted material facts about the MX150 graphics unit that it marketed and sold. Plaintiff Mark Twardzik was in the market for a powerful laptop that could play the newest video games. So he did his research. He chose an HP laptop and he paid extra for an MX150 upgrade. But his screen stuttered and flickered and he learned his laptop could not do what HP and NVIDIA represented it could. Nonetheless, the district court dismissed his complaint with prejudice. In doing so, it erred for at least three reasons. First, the district court erred in its reliance analysis. Under the Maryland Consumer Protection Act, a consumer's reliance on a misrepresentation or omission is presumed. I'm going to stop you right there. Doesn't the statute say that reliance is presumed when there's a public enforcement action, not a private one? So the decision, the seminal case on this point, the Luskin's case, is a case involving the Enforcement Division of the Consumer Protection Division, the AG's office in Maryland. But that decision interpreted the act in general, broadly. There's one statute that both the Enforcement Division and private parties bring cases under. And the Luskin's court, now known the Maryland Supreme Court and Luskin's, held that the act, and I can quote from Luskin's, quote, we hold that the act includes the above description of the reliance element. So its interpretation in Luskin's applies both to enforcement actions and to private party cases. Have the Maryland courts interpreted or held that reliance is presumed in any case where there was a private enforcement action? The Maryland case law on this point is not very well developed, but there are other courts that have held exactly that, applying the Maryland Consumer Protection Act. And the best case on that point is Tate, Tate against BSH Home Appliances. That's a case, a federal district court case, applying the Maryland CPA and analyzing Luskin's. And the Tate court found that Luskin's doing, under an eerie analysis, sitting in diversity, the Maryland Supreme Court had held in Luskin's that reliance is an element that is presumed in consumer class action cases, which is what Tate was. It was a class action case. And so at the pleading stage, at the very least, reliance can be presumed. The Tate court was even further along. That was at a class certification order. So here we're at the pleading stage and reliance can be presumed under the Maryland CPA. So the Maryland CPA says a private plaintiff may bring an action to recover for injury or loss sustained by him as the result of the practice prohibited by this title. So as the result would be the reliance language. Is that, would you agree with that? Yes, Your Honor. Okay. And we're, and we're supposed to presume that anyone who has an injury or loss, it was as a result of the defendant. Is that, is that what you're getting at? Well, the language from the CPA that you just quoted is reliance is an element under the statute, which I think the parties have perhaps misunderstood our argument that the reliance is an element and a plaintiff shows that they are injured. But the Maryland legislature created the CPA as a remedial statute to expand the bases that plaintiffs can bring claims beyond that of the common law. The act is an, is a prohibited act focused inquiry. So the Maryland CPA lists dozens, I think of different prohibited acts and says any, any entity person business that engages in any of these acts, it's prohibited by the CPA. And we want to make sure that it's easier for plaintiffs to bring claims that when they are harmed by these actions and that harm the reliance on the action can be presumed as part of that inquiry. So Maryland Supreme Court said in the Philip Morris case that quote, success in Maryland on a civil claim of fraud requires proof of reliance and close quote. Why wouldn't that apply in the CPA context? It certainly does apply Judge Porter. So I think, again, this is some of the misunderstanding that I think the briefs have engaged in. We don't dispute that reliance is an element of the claim. And both parties agree. And it requires proof of reliance. Well, Making out the, making out that claim requires proof, right? Not presumption of reliance. Well, to prevail on the claim at the end of the day, the proof must be on the side of the plaintiff proponents of the evidence. But what we're arguing is that there is a presumption of reliance. So it need not be pleaded in the complaint? Well, I don't know if it needs to be pleaded. I think that the presumption would show it does not. But I do want to take a step back here and clarify what the complaint does plead. So we've talked a lot about a presumption and the Luskin's court has held what the presumption is, but even if there isn't a presumption, putting the presumption aside, the standard under the Maryland CPA for a plaintiff to show that he relied on an omission is to show that it is substantially likely that he would not have made the choice in question had the defendants disclosed the omitted information. And that's another point I wanted to address. This court asked the parties to focus on the standards for reliance on omission under the Maryland CPA and under the common law. And those standards are different. Even if we put aside the presumption question under the CPA, the showing again is a prohibited act focused inquiry. And the question is whether it's substantially likely that the plaintiff would have made a different choice had that prohibitive act here at the omission not taken place. That's different from the common law standard. Under the common law, a plaintiff must show that he took an act in justifiable reliance on the omission. And so under the Maryland CPA, there isn't an inquiry into whether the plaintiff took an act at all. It's an objective test about the likelihood here. The test is substantial likelihood whether the plaintiff would have made the same choice had the defendants disclosed the information. I guess one of my problems with your complaint, your amended complaint, is you don't indicate that Mr. Wardzik relied on anything. You cite in some of your initial paragraphs and paragraphs thereafter what the two appellees in this case did and what they said. But there's no indication in your amended complaint that Mr. that your client saw any of that. In fact, you state to the contrary, said he saw didn't see anything and anything he saw was what the third-party retailer had said. That's correct, Your Honor. The complaint alleges, well, I should have two responses to your question. So first, the complaint does allege specific representations made by both HP and NVIDIA and omissions that they made to the extent that an omission can be pledged. And then the complaint alleges that Mr. Wardzik relied upon those representations in making his decision to purchase the MX150. I'm sorry, Judge Fischer. It is true that the complaint does not allege specifically that he saw those representations that HP and NVIDIA made on their website, for example. In fact, doesn't it also say the only representation he saw was what the third-party retailer had said about the MX150? Well, I think the complaint alleges that he saw those representations, but I think it's not a fair inference to say that that was the only representation that he saw. It's fair to infer at this stage and, of course, at the pleading stage, all inferences, if reasonable and plausible, are drawn in favor of the plaintiff. Without him saying that, is it fair to infer that he saw what he reported that the HP and NVIDIA had said? Well, I think it's fair and reasonable to infer, for example, he saw the representations that HP or NVIDIA would have made on the packaging of the product, for example. All reasonable consumers would have seen those. But I also think the legal test here is not exactly what my friend on the other side proposes. The legal test here is, I think, set out nicely in the Gonzalez case that we cite in our brief. That's Gonzalez against Drew. It's a federal district court case. In that case, actually, the portion that we cited for, it quotes from the restatement of torts, which is really instructive here. I'll cite that provision. It's the restatement of torts, second edition, section 533. That's analyzing fraudulent misrepresentations. And the restatement says that a maker of a fraudulent representation can be held liable if that maker intends or has reason to believe that the terms of that representation will be repeated or its substance communicated to a third party, to a plaintiff. So the restatement recognizes that it doesn't make sense. And think about how the economy works. It doesn't make sense for a wrongdoer to be held liable for a that wrongdoer's website, their own statement that they published. Think about purchasing a refrigerator, purchasing a dishwasher, any sort of purchase in which you might perform research about that product on the internet and then go to Target or Walmart or Costco and purchase that product. The information that you learned about the product was informed by the representations that the manufacturer made, even if you didn't go to Samsung.com. Now, when he did that research, he learned that the high performance was available on laptops 15 inches or larger. So how could he rely on that research to conclude that a 13-inch laptop would also deliver high performance? Well, Judge Porter, what you're quoting is one portion of one website that he reviewed in doing his research. And at this stage, at the pleading stage, all of the Isn't that one of the few things you specifically said that he relied upon? Well, I think there's a handful of things that we allege that he relied upon. I mean, one of the most direct is that HP and NVIDIA represented the MX150 could play video at a smooth 60 frames per second. And then a subsequent allegation is that when Mr. Torczyk used his laptop, his screen stuttered and flickered. But you didn't allege how many frames per second his laptop performed at. No, Your Honor, we did not. So how can we objectively compare those two statements? Well, at this stage, the court is able to draw the inference that when he alleges his screen stuttered and flickered, it was not performing at a smooth 60 frames per second. And I think the argument made by my friend that a complaint must allege the specific frames per second at which it performs in order to bring a claim that it did not, that that was a misrepresentation. It asks far too much at the pleading stage. There's no requirement or even an expectation of a plaintiff to perform a scientific analysis of the frames per second that his computer can perform at. Here, he alleged that his screen stuttered and flickered and it could not do what he understood it could do from the context of the representations. Can I ask you about another aspect? You say you should have been given leave to amend. Yes, Your Honor. Based on, you know, how you couched Mr. Werdziak's knowledge of what was out there before he bought the HP-13, how could you consistently, how could you, consistent with the facts you've already alleged, amend your complaint to make it any better? Well, we certainly think we can, we're able to. What would you be able to say that wouldn't contradict what you've already said? I can identify, there's three instances in which the district court identified in its dismissal order that it thought the pleading was deficient, which suggests, at least implicitly, if not explicitly, that the court recognized amendment would not be futile. It identified three places where it thought more allegations would suffice, and I think on amendment we could plead all three. The first is that the district court identified that Mr. Twardzik never says that the statements HP and NVIDIA made were false. That, in my view, that's a one-paragraph amendment. The statements are false. The inferences can be drawn from the complaint that the statements are false, but if the district court would ask that that be explicitly pled, that can be pled on amendment. The second instance that the district court identified is that Mr. Twardzik never discussed how many frames per second the laptop processed, which Judge Freeman identified this point as well. In our view, that's not necessary at the pleading stage to identify specifically the scientific, technical answer of how many frames per second the laptop could process, but if that is required, that is something that is possible to plead on amendment, and that could address that issue that the district court identified. And the third item that the district court identified in explaining additional allegations that could state the claim is that Mr. Twardzik does not HP and NVIDIA. Okay, but at least as to the reliance in the original motion to dismiss, the defendants cite the same deficiency in your amendment. You didn't do anything to cover that and make it more specific. Well, I don't think the Third Circuit's rules on this are not quite, they don't require that of a plaintiff to respond to a motion to dismiss in absence of a court order. But you had, you were on notice that that was one of the points they were going to raise, and you didn't seem, you didn't seem to do anything to cure that deficiency in your first amendment complaint. The amended complaint addresses some other items and not, not in, some were not addressed, that's fair to say. But I'd like to point out and address the issue that you raised, that my friends are arguing that a motion to dismiss on its own by a defendant is sufficient to allow a district court to deny leave to amend in the absence of a court order. The court's dismissal order was the first time the district court had weighed in on the issue. Good morning, your honors. May it please the court, my name is David Feeder from Fenwick and West, and I'm here representing Appalese HP and NVIDIA. Respectfully, your honors, this court should affirm Judge Bebas's dismissal because plaintiff has not pled reliance. The plaintiff does not that he sought any representation made by defendants in considering whether to purchase the laptop, and I invite the court to look at exactly what allegations of reliance actually exist in the first amended complaint. Two, one sentence. Let me ask you about reliance as it relates to the material admission. Why would somebody need to plead reliance on something that was not said? He's essentially saying, in retrospect, HP and NVIDIA didn't mention anything about this slower MX150 in the smaller tablet. Because, your honor, Maryland case law is clear that in order to state a claim based on a material omission under either the common law or the Maryland Consumer Protection Act, you must show reliance. Which case are you citing that makes it so clear? So, your honor, I draw your attention to Mitchell, which is a decision by a district court judge in the District of Maryland, which weighed whether or not there was the requirement that your honor. Wasn't that an v. Mitchell, your honor? And that involves whether there was a disclosure of a prepayment penalty, a breakage fee, as it's called, in some loan documents that the plaintiff alleges should have been in that disclosure. And the court weighed both misrepresentation and omission under the Maryland Consumer Protection Act and found that just as with a misrepresentation, an omission requires proof of reliance. And here there is no such proof of reliance. Wasn't that a restitution case? No, your honor. That was a private cause of action brought pursuant to 13-408A. It was not a restitution case. It was not an enforcement action brought by the Maryland Consumer Protection Division. So, the MCPA says that to plead material omission, the plaintiff has to show that his injury was sustained as the result of the omission. Is that what you're calling the reliance element? Sustained as a result of the omission. Yes, your honor. So, what under 13-408A, as your honor said to my friend, the standard is as a result of, right? That's what's in 13-408A. That's what the Maryland then Court of Appeals, now Supreme Court, in Lloyd v. General Motors said was the basis for the reliance obligation under misrepresentation or omission. Okay. So, when Mr. Swartz alleged in his complaint that the inclusion of the MX-150 was a factor in his purchase, wouldn't that satisfy that his injury was sustained as a result of the omission? So, your honor, it does not. One reason is because this is a claim for fraud. And so, it must be pled with particularity under Rule 9B. Haven't the Maryland courts discussed that it's hard to plead the who, what, where, when, and how when you were talking about an omission? Except, yes, your honor, there is a reduced standard, not a presumption, I want to be clear, but a reduced standard for pleading an omission as opposed to a misrepresentation. But in this case, your honor, the defendant tells us what he relies on, right? What he relies on are two sentences. One, prior to making his purchase, this is paragraph 84, quote, prior to making his purchase, plaintiff saw the HP-NB13 promoted on slickdeals.net, which is a third-party website. And then the following paragraph, your honor, this is on page 39 of the appendix, quote, plaintiff researched the class laptops by comparing the results of various performance benchmark tests posted to the web by third-party reviewers. Do you agree, though, that HP advertised and put on, in fact, I think the packaging of the product, that it contained the MX150? So there's no allegation, to be clear, your honor, about Mr. Twardzik having seen the packaging beforehand because he purchased it from Adorama, a third-party retailer website. But in terms of an omission, I'm sorry, your honor? Wasn't there an allegation that upon receipt, he saw the packaging and it stated that an MX150 was There's a tag on the laptop, on the lower right corner of the laptop that he shows, but it doesn't say MX150. But more importantly, your honor, there's no allegation here that there was an omission made by the defendants about a clock speed guarantee. There's no argument here. There's no allegation here that what defendant saw should lead, what plaintiff saw should have led him to the realization that there was some preset clock speed guarantee minimum threshold that he was going to be able to get when he got his laptop. It's just not there. So I guess, one, stepping back a little bit, zooming out, how is it okay for a company to produce two products, let's call them engines, right? So just call them both engines. They put on the package, it contains an engine and not specify whether it's the faster or the slower. So your honor, there were not two products here, right? There's no allegation that there were two products. Well, there's the MX150 and then there's the slowed MX150. So there is one product, your honor, that has a variable attribute that is fit for different implementations. And so when it's installed in one size computer, it can do certain things up to a certain attribute. And that attribute can be lower when it's in a different device. And that is exactly what NVIDIA said. It is the same product? It is the same product, your honor. I'm sorry, your honor. Why does it have two part numbers? It has two part numbers precisely for the reason that's disclosed by NVIDIA on appendix page 66, which is that the specification, the implementation of the device will vary based on the device into which it's installed. Okay, so you're acknowledging though that the slowed version, to use plainest language, performs differently than the other part number that will perform faster in certain applications? So it's an adjustable attribute. It's like a meter, right? And it can be changed up or down based on the device into which, to the optimal setting for the device in which it's installed. For the device, the HP NV13, it was set to a certain clock speed. That's the amount of processing the computer can do over a given period of time. But it's also adjustable. Can the consumer adjust it? Yes, it can, your honor. And that's also alleged and acknowledged in the complaint that a GPU like the MX150 can be adjusted in terms of clock speed to MAC for whatever functionality or performance the user wants. And so it is something that's capable of being done. And plaintiff never alleges whether or not he attempted to change the clock speed, so-called overclock, the device based on its preset setting optimized for this device. And so the only allegation out there is that it is an adjustable by the user attribute of this. If Slick Deals or Adorama incorporated your client's ad copy on their websites, would a consumer be able to bring a claim against your client for those statements? So there is a concept of indirect reliance in Maryland law, but we don't have it here because it's not alleged in the complaint. The plaintiff identifies nothing that he saw on those third-party websites. He only names one of them, slickdeals.net. He doesn't say what the third-party websites actually said. He doesn't connect anything that he saw or read on those websites to anything said by HP or NVIDIA. There's no reference to clock speed, much less, again, a default clock speed guarantee on those websites. And that's just not enough. That's not enough to establish the type of reliance that Maryland requires for plaintiffs to hold merchants to account for representations or omissions. And again, we're putting an awful lot of stock on something on slickdeals.net that we don't know about, that we can't see. And this isn't just enforcing the pleading rules in an academic way. The reasons manifest here, and that's because the defendants explained this variable attribute clock speed in the specifications that are cited on, again, on page Appendix 66. It tells the consumer that your mileage may vary when it comes to this based on the setting when it's installed in a particular device. And so it's not clear whether that level of variability was reflected accurately in slickdeals, much less these other third-party sites where it's not told what devices were examined, how the benchmark tests were performed, or even what their names are. I want to go back to the reliance question a bit. Paragraph 33 of the First Amendment complaint says, Plaintiff Mark Wardziak is an individual who resides in Ellicott City, Maryland. In reliance on defendant's advertising and marketing, plaintiff paid $849.99 for the HP Envy 13. Can't we infer from that allegation and that specific allegation in the advertising and marketing report of what caused Wardziak and others to buy this product of HP's? No, Your Honor. And the reason is because he makes other allegations about what he, in fact, saw. And what he, in fact, saw doesn't link back at all to anything that defendants said. In order to hold defendants to account in a class action lawsuit about representations that they made, the plaintiff at least has to link those representations or omissions back to something that was actually said by the defendants. Do the claims against HP and NVIDIA necessarily rise or fall together? Or is there any reason we might treat them separately? There's an independent claim against HP, Your Honor, based on an allegation of rescission, which we address in our brief. But as to the MCPA and common law fraud claims, the defendants stand together, Your Honor. The key being that there's no showing of reliance on statements made or omissions made by either one of them, Your Honor. Your Honor, I ask the opposing counsel the question on why Kwadziak shouldn't be given the opportunity to amend the First Amendment complaint. And I'll refer you to the decision of our court in the estate of Lugano, okay, where now Chief Judge Chigueras said that the estate must be permitted to file a Second Amendment complaint unless the district court makes a finding of futility. Would you acknowledge that the district court here did not make a finding of futility? Oh, I would acknowledge just the opposite, Your Honor. Okay. Judge Bibas saw the record for what it was, and he explained that he dismissed because having had a chance to amend already, having been put on notice, and if you look at supplemental appendix pages 52 through 54, defendants briefed this. I mean, does plaintiff have to agree with, you know, alter his pleading to conform with all arguments that defendants make in a motion to dismiss? There, well, Judge Schreeman, that's a good question. I would say that the plaintiffs are notice of the deficiency of the claim, a fatal deficiency of their claim. They have noticed that defendants are making that argument, but the court hasn't spoken until there's an order on a motion to dismiss, whether there's in fact a deficiency in the court's view. But the Third Circuit does not, this court does not require a district court to have weighed in as a rule where a case is futile, where an allegation is futile, and that is the inevitable conclusion that was drawn here by Judge Bebus. He saw this case. He could see that there is no allegation of reliance that plaintiff is going to be able to make if this case is remanded, right? There's no, there's no, he can't go back and see what he did not see prior to his purchase. There, and to be clear, that would be an abuse of discretion, right? You would have to find that Judge Bebus abused his discretion in finding that there's no basis on which no facts that plaintiff can allege to demonstrate that they're... He didn't necessarily find that, did he? It is clear from his record having... Wait, did he say that? So he, so here's where he says it, Your Honor. He says, regarding the plaintiff, he relied on their misleading marketing, but he provides no information to support this, even after HP and your motion to dismiss. Having had the chance to amend, he doesn't get another chance now. And if, and I see my time is up, Your Honor, if I might just make this last point. For an abuse of discretion, for this court to find that Judge Bebus abused his discretion, at the very least, plaintiffs should come forward and explain, well, what are you, what facts are you going to supply to demonstrate that there was actual reliance here? And they can't, because the plaintiff can't go back and explain now to see what he didn't see. When we asked this question of your friend, he mentioned three specific things that he could, and let's stipulate he makes those three changes. Why wouldn't that be sufficient? The third one was reliance, and my friend did not mention what it was that the plaintiff can allege at this point, having alleged what he already has, two third-party websites. Well, that would be enough to get by the misrepresentation claim, though, wouldn't it? But, Your Honor, the plaintiff still has to establish reliance on an omission made by the plaintiff, because he does not point to anything, anything that the defendants have said. Okay, if you're correct, he wouldn't proceed on the material omission, but he could still proceed on the misrepresentation. But, Your Honor, then the misrepresentation is, again, what's cited in, or what's alleged in paragraphs 84 and 85 of the complaint, and for the reasons I've addressed previously, those don't suffice for a misrepresentation or an omission under the statute. I think the most concrete aspect to look at is the frames per second. Let's say the advertising says 60 frames per second. Plaintiff thinks it was okay to just say stuttered, but let's say upon the filing of a second amended complaint, plaintiff says it performed at fewer than 60 frames per second, even if it's not specific. Then that would be, and could that potentially cure the problem? No, Your Honor, because that wouldn't go to reliance, because plaintiff did not see any representation about 60 frames per second as alleged in the complaint. Plaintiff did not see, you're saying plaintiff did not allege it? I believe that might be paragraph 66 or thereabouts in the first amended complaint, Your Honor. Plaintiff did not see those representations that he attributes to HP or NVIDIA. He only saw what I cited in paragraphs 84 and 85, Your Honor, which are on the third party websites. My recollection was that, okay, well, let's assume for the moment that HP did say, did make the representation 60 frames per second, and maybe counsel on rebuttal can point me to where in the complaint that that allegation is. It seems like perhaps in that regard, there would be reliance. If that hypothetical were true, that HP did make the representation? Understanding it's a hypothetical, Your Honor, the plaintiff had multiple occasions to plead, to come forward in a brief, in the two briefs filed here, Your Honors, to say that he saw anything that HP or NVIDIA said. He didn't. He did not see that 60 frames per second, so that even if he alleges what his own device did in stuttering or whatnot, it doesn't get back to that. He didn't see that representation and thus has not satisfied the indispensable element of reliance. Thank you, Mr. Feeder.  I'd like to begin first by addressing Judge Freeman's question that she posed about the 60 frames per second representation. That's alleged in paragraph 70 of the operative complaint. Seven zero? Seven zero. Yes, Your Honor. In fact, paragraphs 67 through 70 allege a number of representations by HP and NVIDIA about the performance capabilities of the MX150, including the 60 frames per second representation, up to four times faster for work and play. 67 through 70 are the operative provisions. And then the very next paragraph, paragraph 71, alleges that the plaintiff relied on these representations in making the decision to purchase the MX150. Where does it say he saw those representations? It does not directly allege that he saw those representations, Your Honor. But this actually brings me to a question, a note raised by Judge Fischer. Judge Fischer pointed out paragraph 33 in the complaint. And actually, I think paragraph 83 provides more support for that point. Paragraph 83 alleges that it is because NVIDIA did not disclose the differences between the two MX150 variations. And because the HP specifications for the laptops also did not disclose this, plaintiffs and the members of the class chose to purchase the MX150. So these paragraphs and allegations together are sufficient to state the claims for both representations and omissions. But I'd like to clarify and clear up some of the discussion about the omission theory, which I think I can provide some clarity to. So as I addressed earlier, the standard of law for reliance on an omission is whether it is substantially likely that the plaintiff would have made the same choice had the defendants disclosed the omitted facts. So that's not quite the same standard that I think my friend was addressing when he says the plaintiff never alleges specifically he saw those statements from HP and NVIDIA. It's a question of substantial likelihood. Had these facts been disclosed to the allegations about Mr. Twardzyk, he wanted a laptop that was powerful enough to play the latest video games, and he performed research to that effect to learn if that was possible. That inference, at least an inference, can be drawn if not the allegations outright state the claim on their face under that standard of law for omissions under the Maryland CPA. Also, I want to clarify one other thing about where we are right now. We're on a review of a dismissal of a complaint. So, of course, the allegations in the complaint are accepted as true for the purposes of this review. And the complaint is clear about the MX150 and the complaint's theory about them. There are two versions of the MX150, and HP and NVIDIA marketed them as one. There is the MX150 that they marketed and represented could perform a smooth 60 frames per second and up to four times faster than its predecessor. And there is a slower version, an imposter version, as alleged. And Judge Freeman pointed this out. NVIDIA has two different model numbers for the two MX150 versions. And if users of the laptop go on the settings of the laptop, they will see a different model identifier for each of the two versions of the MX150. So the complaint alleges that these are really two different items. Is it two different processors with two different performance capacities, or is it one processor that, depending on its setting, which can be changed, that determines its performance? And so the consumer can change it so that no matter what device it's in, he can ramp it up. Well, so I would, functionally, it's two separate items. But your point, Judge Porter, I understand to ask about whether a consumer can change this. Yeah. First of all, I think this is much better addressed at Discovery with the use of experts and people who understand better than me how computers like this operate. But it is true, I understand that overclocking a chip can cause permanent damage to the hardware of the laptop. The laptop heat dissipation is an issue. And when a chip is running too fast, you're not going to put a Lamborghini engine into a Volkswagen Beetle. And that's essentially what HP and NVIDIA did here, told everybody that it can perform this high level, and then the car can't go faster than 50 miles an hour, even though the consumers understood from the representations that it would perform at the high level that HP and NVIDIA had marketed it to do. So I see my time has expired. I'm happy to address any other questions. But if not, I ask that this court reverse. Okay. Thank you.